**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


SORAKHA ROS,                          :
                                      :
            Petitioner,               :        CIVIL ACTION
                                      :
     v.                               :
                                      :        NO. 12-cv-321
                                      :
                                      :
JANET NAPOLITANO, ALEJANDRO           :
MAYORKAS, and EVANGELIA               :
KLAPAKIS                              :
                                      :
            Defendants.               :


## MEMORANDUM AND ORDER

**JOYNER, J.**                                    **July 10, 2013**

     Before this Court are Petitioner's Motion in Limine (Doc.
No. 17), Defendants' Response in opposition thereto (Doc. No.
19), and Defendants' Cross-Motion for Summary Judgment (Doc. No.
15). These motions were filed in connection with the Petitioner's
Amended Petition for De Novo Review of Naturalization Denial
(Doc. No. 7), which she filed after her application to become a
naturalized citizen was denied by United States Citizenship and
Immigration Services. For the reasons set forth in this
Memorandum, the Petitioner's Motion in Limine will be denied and
Defendants' Motion for Summary Judgment will be granted.

# I. BACKGROUND

The majority of the material facts in this case are not in dispute.[1] Sorakha Ros ("Ros" or "the Petitioner") was born in Phnom Penh, Cambodia and is a Cambodian citizen. On January 1, 1990, she married Sam An Ly ("Ly") in Cambodia. Ros sought to obtain a divorce from Ly in Cambodia sometime in 2001. The Petitioner possesses a Cambodian divorce decree allegedly issued on July 7, 2001, prior to September 9, 2001 when she departed Cambodia to come to the United States.[2] Ros met Phay Tong ("Tong"), currently a naturalized United States citizen,[3] shortly after arriving in the United States. Ros and Tong were married in Philadelphia on April 13, 2002.

On July 18, 2005, Tong filed an I-130 Petition for Alien Relative with the United States Citizenship and Immigration Services ("USCIS") on behalf of Ros. On November 14, 2005,

---

[1] The facts as recounted here are derived from the evidence put forth by both parties. In particular, we relied upon the Petitioner's original Petition (Doc. No. 1), and the corresponding attached exhibits, and Defendant's Cross-Motion for Summary Judgment (Doc. No. 15), and the corresponding attached exhibits.

[2] There are inconsistences in the record regarding the facts surrounding Ros' divorce from Ly. In her affidavit regarding the validity of her divorce, she asserts that she told Ly that she wanted a divorce after arriving in the United States and meeting her current husband; however, this is plainly inconsistent with her assertion that her divorce from Ly was finalized in July of 2001, two months prior to her arrival in the United States. The record lacks an explanation for this apparent discrepancy; however, it is possible that Ly filed for divorce in Cambodia without her knowledge. Nonetheless, these discrepancies in the record are immaterial to the resolution of the issues currently before the Court.

[3] Although it is immaterial to the resolution of the issue before the Court, in Tong's Petition for Alien Relative he asserts that he became a naturalized citizen on July 1, 2005. In Ros' application for naturalization, she claims that he became a U.S. citizen on June 8, 2004.

following a "*Stokes*" interview[4] with Ros and Tong to verify the authenticity of their marriage, the USCIS approved Tong's petition, and granted Ros status as a Lawful Permanent Resident ("LPR").[5]

Ros filed a *pro se* N-400 Application for Naturalization with the USCIS on September 18, 2008,[6] seeking to obtain United States citizenship. Tong and Ros had another "*Stokes*" interview with immigration officers in connection with her naturalization application. Due to alleged misrepresentations by Ros and Tong in their separate interviews, the suspicions of immigration officials were triggered. Accordingly, on April 27, 2009, the USCIS denied Ros' naturalization application despite her provision of various requested evidence supporting the validity of her marriage to Tong. The reasons given for the initial denial were Ros' failure to respond to a request for her to explain discrepancies that arose between her and Tong's interview

---

[4] "*Stokes*" interviews are performed by Immigration and Naturalization Services officers prior to approval of an I-130 petition. The adversarial interview process is designed to uncover marriage fraud, and prevent immigration benefits from going to ineligible applicants. See Stokes v. U.S., Immigration & Naturalization Serv., 393 F. Supp. 24, 28 (S.D.N.Y. 1975).

[5] In the United States obtaining LPR status is commonly referred to as obtaining a "green card." The statutory requirements for adjustment of immigration status can be found in 8 U.S.C. § 1255.

[6] Again, the record shows varying dates for when Ros filed her naturalization application. The Defendants Motion indicates it was on September 7, 2008, the Petitioner's Motion states it was filed on September 18, 2008, and the application itself appears to have been signed and dated on September 15, 2008. This discrepancy is immaterial to the resolution of the case.

statements and giving misleading information to create the appearance of a marital union. At no point in the 2009 denial of her application did the USCIS suggest that their reason for denial was related to the validity of her 2001 divorce from Ly.

On May 22, 2009, Ros filed an N-336 Request for Hearing on a Decision in Naturalization Proceedings under section 336 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.* This hearing is essentially an administrative appeal of the initial denial of an N-400 naturalization application. USCIS Officer Gayle Burroughs conducted an N-336 hearing on January 14, 2010. More than two years later, the USCIS issued a final decision denying her Application for Naturalization. The denial of Ros' naturalization application was based upon her failure to meet the strict statutory requirements for naturalization under 8 U.S.C. § 1427.

Unlike the initial denial in 2009, the 2012 denial of Ros' naturalization application was based upon the fraudulent nature of the Cambodian divorce decree Ros put forth to support her initial I-130 petition for LPR status. According to an investigation conducted by the Fraud Prevention Unit at the American Embassy in Bangkok in 2006, there were a large number of fraudulent divorce decrees allegedly issued by the Phnom Penh Municipal Court. The consular investigative report found that this large-scale production of sham divorce decrees was aimed at

conferring U.S. immigration benefits upon otherwise ineligible Cambodian applicants. The report included a list of specific Cambodian divorce decrees that were confirmed as fraudulent. The findings in the consular report were verified by the President of the Phnom Penh Municipal Court, the same court that had allegedly issued the documents. The Phnom Penh Municipal Court confirmed that the decree submitted to the USCIS by Ros as proof of her divorce from Ly was one of the fraudulent decrees identified by the State Department.

The USCIS issued a Notice of Intent to Deny Ros' administrative appeal on March 16, 2012, apprising Ros for the first time of the government's suspicions about her divorce decree. On April 12, 2012, Ros submitted a sworn affidavit in response to the Department of State's determination that her Cambodian divorce decree was a fraud.[7] The affidavit states that she told Ly she wanted a divorce after arriving in the United States, and "he said right away he would file the divorce in Cambodia, and he did." (Ex. F to Def.'s Mot., 1, Doc No. 15-3). She further stated, "I know my divorce paper from Cambodia is real, I was born there and I know my ex-husband wanted to get a divorce from me as much as I wanted to be divorced," and later

---

[7] This was the only evidence put forward by Ros to counter the Government's evidence that she had never been lawfully divorced from Ly in Cambodia.

repeats, "I am divorced from Sam An Ly... I know in my heart this is true." (Id. at 2).

The USCIS found that the affidavit only further supported their belief that the divorce degree was fraudulent. The USCIS concluded in the April 2012 denial that Ros was not legally divorced from Ly in 2002 when she married Tong. Accordingly, the USCIS determined that under the laws of Pennsylvania, Ros was not free to legally marry Tong. As such, she had failed to establish that she was lawfully admitted to the United States for permanent residence when she obtained her LPR status, a requirement for naturalization. Given that the basis of her previously obtained LPR status and her alleged eligibility for naturalization was based solely on her marriage to Tong, Ros' application to become a naturalized citizen was denied under 8 U.S.C. § 1427. Ros filed a petition for de novo review before this Court of the USCIS denial of her application for naturalization, pursuant to 8 U.S.C. § 1421(c).[8] Named Defendants are Janet Napolitano, Secretary for the Department of Homeland Security, Alejandro Mayorkas, Director of the USCIS, and Evangelia Klapakis, Field Office Director of the USCIS ("Defendants" or "the Government").

---

[8] Section 1421(c) permits "a person whose application for naturalization . . . is denied . . . [to] seek review of such denial before the United States district court for the district in which such person resides . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

On January 20, 2012, prior to the April USCIS decision to deny the Petitioner's naturalization application, the Petitioner filed her original Petition (Doc. No. 1) with this Court seeking to compel agency judgment on her naturalization application. After the April 2012 decision, the Petitioner filed an Amended Petition for Review of Naturalization Denial (Doc. No. 7) on July 31, 2012, with the Court's leave. The Government submitted an Answer (Doc. No. 9) to the Petition on August 17, 2012. After discovery, the Government filed a Cross-Motion for Summary Judgment[9] (Doc. No. 15) on the Petition for Review. The following day, the Petitioner filed a Motion in Limine (Doc. No. 17), seeking to preclude the Court's consideration of evidence submitted by the Government regarding her divorce decree. On February 8, 2013, the Government filed a Response (Doc. No. 19) to the Petitioner's Motion in Limine. These motions are currently before the Court for resolution.

## II. The Petitioner's Motion in Limine

Before we turn to the Petitioner's eligibility to naturalize, we must first address the Petitioner's Motion in Limine. The Petitioner seeks to preclude this Court's

---

[9] The Petitioner did not file a motion for summary judgment, or a response to the Defendants' motion. Instead, she filed a motion in limine to prevent the introduction of government evidence disputing the veracity of her divorce decree. Many of the arguments made in the Petitioner's Motion do not address the exclusion of the evidence. These arguments are addressed in the discussion of summary judgment below. Additionally, anticipating the submission of a summary judgment motion by the Petitioner, the Defendants mistitled their summary judgment motion as Defendant's Cross-Motion for Summary Judgment (Doc. No. 15).

consideration of the consular report and other evidence put forth by the Government disputing the authenticity of her divorce decree. The Petitioner's Motion alleges that: 1) the specific evidence is not relevant to the resolution of the issue before the Court; and 2) the introduction of such evidence would be improper under Federal Rule of Evidence 403.

First, the Petitioner puts forward no cognizable legal argument as to why the evidence regarding the authenticity of her divorce decree is irrelevant. Resolution of this petition for review depends on whether the Petitioner has satisfied the statutory naturalization requirements. One of these Congressionally mandated prerequisites for eligibility for naturalization is that the applicant must have been "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a). The Petitioner obtained LPR status in November 2005 based solely upon her marriage to Tong. Accordingly, the authenticity of her divorce from her first husband prior to her marriage to Tong is vitally relevant to any determination as to whether she lawfully obtained her LPR status in 2005, and thus whether she is eligible for naturalization under § 1427(a). If the Petitioner was not legally divorced from Ly under the laws of Cambodia,[10] she was

---

[10] Cambodian "Law on the Marriage and Family," Article 41 Chapter 5 provides that "the adjudicating jurisdiction for divorce lies with the People's Provincial or Municipal Court where the defendant resides." Compendium of Cambodian Laws, Council for the Development of Cambodia, UNDP Project CMB96-005, promulgated July 18, 1989. Since the President of the Phnom Penh Municipal Court confirmed in 2006 that Ros' divorce decree was not in

8

not eligible to marry Tong in 2002 under Pennsylvania law, which forbids bigamous marriages. See 23 Pa. Cons. Stat. Ann. § 1702. Since determination of the Petitioner's eligibility for naturalization hinges on the legality of her 2002 marriage to Tong and the divorce decree she submitted to meet her burden of proof is a forgery, evidence supporting the Government's argument that her divorce was obtained fraudulently is clearly relevant.

Second, the Petitioner contends that the Government's evidence should be precluded as improper. In support of this claim, the Petitioner cites Federal Rule of Evidence 403, which states: "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case." Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980). Under the Rule, evidence is unfairly prejudicial if it "appeals to the [factfinder's] sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a [factfinder] to base its decision on something other than the established propositions in the case." Id.

---

fact issued by the court, under the law of Cambodia, she was never legally divorced.

The Petitioner's argument seems to imply that due to the six year gap between the initial issuance of the consular report in 2006 and when the report was brought to her attention in 2012, allowing the evidence to be considered will unfairly prejudice her naturalization petition. In support of this argument, the Petitioner cites a number of procedural irregularities[11] in her "*Stokes*" interviews with immigration officers. Even accepting the existence of these procedural defects, there is no authority that supports the notion that such defects constitute a legal evidentiary bar. Although the consular report is undoubtedly prejudicial to the Petitioner's case in the sense that it is unfavorable to the outcome of her naturalization petition, it presents no conceivable danger of the type of unfair prejudice objectionable under Rule 403.

The record does not indicate why it took the Government six years to inform the Petitioner that her divorce decree was fraudulent. When they denied her initial application in 2009 due to the misleading information submitted during her interview, nothing prevented the Government from bringing the consular report to the Petitioner's attention. The Petitioner's Motion

---

[11] The Petitioner's argument seems to suggest, without legal support, that the length of time that she and Tong were separated during their "*Stokes*" interviews, and the fact that immigration officers videotaped a 2010 interview in connection with her administrative hearing make evidence regarding her divorce degree inadmissable. However, at no point in the Petitioner's motion is a due process claim raised with respect to the admissibility of the consular report.

suggests without support that the reason for the delay was disingenuous, stating that the government "lied," and has "hidden the ball." These assertions alone do not lead to the conclusion that the evidence should be precluded because she was not informed earlier of the report. Although this behavior may appear deceitful at first blush, nothing in the record supports the inference that the government deliberately obscured the truth in a manner designed to prejudice her application for naturalization. Furthermore, there is no authority to support the Petitioner's argument that by denying her naturalization application on different grounds in 2012 than in 2009, the evidence submitted to support the 2012 denial must be precluded. The Petitioner also cites no authority that supports a requirement that the USCIS investigate or raise all potential avenues for a naturalization denial at once or disclose each basis for denial upon discovering it. Nor is there authority suggesting that Rule 403 creates an evidentiary bar in all cases involving a procedural irregularity in an administrative proceeding. Even assuming there was a procedural defect of some sort in her interview and application process, that does not lead to the conclusion that the evidence at issue must be barred as unfairly prejudicial under Rule 403.

Although it was not raised by the Petitioner, since the State Department consular report is a statement that the

Government "offers in evidence to prove the truth of the matter asserted in the statement," the Government admits that it is hearsay under Federal Rule of Evidence 801(c)(2). Nonetheless, the consular report is admissible for consideration under the public records and reports exception to the hearsay rule. See Fed. R. Evid. 803(8). Under Rule 803(8), in a civil case, "factual findings from a legally authorized investigation" are "not excluded by the rule against hearsay," so long as "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii), (8)(B). Official State Department reports, including investigations conducted by U.S. Embassies abroad, are "admissible despite their status as hearsay and regardless of the availability of any opportunity to cross-examine the authors." See Doumbia v. Gonzales, 472 F.3d 957, 963 (7th Cir. 2007); Etape v. Napolitano, 664 F. Supp. 2d 498, 512 (D. Md. 2009). Accordingly, unless the record indicates that the consular report is not trustworthy, it clearly falls within the public records exception to the hearsay rule.

Neither the facts leading up to the investigation into the forged Cambodian marriage decrees, nor the sources or methods of the investigation indicate a lack of trustworthiness. To determine the trustworthiness of a foreign report, relevant factors include the steps taken by the investigator, the

circumstances in which the report was issued, and the known information regarding the investigator. See Ezeaqwuna v. Ashcroft, 325 F.3d 396, 408 (3d Cir. 2003) (using these factors to determine that in an asylum case, a State Department letter that stated only conclusions of an investigation was inadmissible hearsay because of "the complete dearth of information about the investigator or the investigation"); see also Min Huang v. Attorney Gen. of U.S., 376 F. App'x 253, 256 (3d Cir. 2010) (distinguishing Ezeaqwuna because the problematic issues with the letter in that case were not present with respect to the particular consular report in question).

In determining whether the investigative consular report here is sufficiently trustworthy to be admissible under the Federal Rules of Evidence, the Third Circuit decisions in Min Huang and Ezeaqwuna are instructive. In Min Huang, the Third Circuit explained that the State Department letter in Ezeaqwuna was rejected because it "(1) contained multiple levels of hearsay, in that the letter's author was at least three people removed from the actual investigatory declarants, (2) contained no explanation of what investigation actually took place, and (3) was issued to the alien only a few days before the removal hearing." Min Huang, 376 F. App'x at 256. In distinguishing the report at issue in Min Huang from the letter in Ezeaqwuna, the court stated: "unlike . . . in Ezeaqwuna, the consular report in

13

Huang's case was prepared by the same individual who conducted the investigation, the author was in direct contact with the organizations that analyzed Huang's proffered documents, and Huang received a copy of the report nearly a year before his removal hearing." Id.

The investigative report conducted and issued by the Fraud Prevention Unit ("the FPU") at the American Embassy in Bangkok disputing the veracity of the Petitioner's divorce decree is trustworthy, and does not contain the flaws articulated in Ezeagwuna. Here, like in Min Huang, reliance on the investigative consular report that shows the existence of fraud to obtain immigration benefits is not improper. First, as in Min Huang, the author of the report was in direct contact with the Cambodian court that had allegedly issued and subsequently analyzed the Petitioner's fraudulent divorce decree. Second, the Petitioner received a copy of the consular report during discovery, which provided her with a sufficient opportunity to refute the report or its findings before this Court. Third, the procedural history and justification for the investigation are well documented here. After receiving suspicious divorce documents they believed were forgeries created to confer immigration benefits on ineligible aliens, the USCIS transferred the documents to the FPU. The FPU submitted the documents to the Consular Section of Phnom Penh, which then submitted the suspicious documents to the Phnom Penh

Municipal Court for verification of their authenticity. The Cambodian court cross checked the decrees submitted by the FPU with their records and determined that the Petitioner's divorce decree was one of the decrees they determined to be fraudulent. Lastly, unlike in Ezeaqwuna where an expert witness specifically testified that in Cameroon it is "very difficult to prove and/or disprove the authenticity of [official] documents," here, the source that indicated that the Petitioner's divorce decree was fraudulent was the same authority that had allegedly issued and signed the decree. Ezeaqwuna, 325 F.3d at 408. It would be difficult to find a more credible source to verify the authenticity of the Petitioner's divorce decree than the court that allegedly issued it.

From a practical standpoint it would be bad policy to hold that legitimate State Department investigations into immigration fraud are "untrustworthy" from an evidentiary perspective. Such a holding in these circumstances would hinder State Department attempts to obstruct large-scale immigration fraud. Coupled with the Petitioner's lack of evidence challenging the trustworthiness of the investigation or countering its conclusion, we are clearly led to the conclusion that the Government's evidence is admissible under the public records hearsay exception of Federal Rule of Evidence 803(8). Therefore, we will consider the consular report disputing the veracity of the Petitioner's divorce decree

as part of the record for the purposes of summary judgment.
Accordingly, the Petitioner's Motion in Limine is denied.

### III. The Government's Motion for Summary Judgment

### A. Standard of Review on Summary Judgment

Summary judgment will be appropriately granted where "the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). There is a genuine issue of material fact
under Rule 56 if "the evidence is such that a reasonable jury
could return a verdict for the nonmoving party." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the "mere
existence of a scintilla of evidence in support of the
[nonmovant's] position will be insufficient" to defeat summary
judgment. Id. at 252. In addition, "conclusory, self-serving
affidavits are insufficient to withstand a motion for summary
judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d
156, 161 (3d Cir. 2009).

The moving party must initially show that there is no
genuine issue of material fact. Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986). "Where the nonmoving party will bear the
burden of proof at trial on a dispositive issue, a summary
judgment motion may properly be made in reliance solely on the
pleadings, depositions, answers to interrogatories, and
admissions on file." Id. at 324.  Accordingly, Rule 56 "mandates

16

the entry of summary judgment, after adequate time for discovery
and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial." Id. at 322. In determining whether the non-
moving party has established the essential elements of their
case, the court must draw all reasonable inferences in that
party's favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).

## B. District Court Review of Naturalization Denial

USCIS denial of an application for naturalization is
reviewed de novo by a district court pursuant to 8 U.S.C.
§ 1421(c). Under § 1421(c), the district court is required to
"make its own findings of fact and conclusions of law." Abulkhair
v. Bush, 413 F. App'x 502, 508 (3d Cir. 2011). Therefore, under
§ 1421(c), in reviewing a USCIS naturalization denial, "*the
district court has the final word* and does not defer to any of
the INS's findings or conclusions." Chan v. Gantner, 464 F.3d
289, 291 (2d Cir. 2006)(emphasis in original)(quoting United
States v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004)).

Given the compelling government interest in granting only
qualified persons citizenship, "there must be be strict
compliance with all the congressionally imposed prerequisites to
the acquisition of citizenship." Fedorenko v. United States, 449

U.S. 490, 506 (1981). Therefore, "no alien has the slightest right to naturalization unless all statutory requirements are complied with." Id. at 552 (quoting United States v. Ginsberg, 242 U.S. 472, 475 (1917)). It is "universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967); see also 8 U.S.C. § 1429 ("[T]he burden of proof shall be upon such person [seeking naturalization] to show that he entered the United States lawfully."); 8 C.F.R. § 316.2(b) ("The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization"). Given this strictly imposed burden on applicants to prove their naturalization eligibility, a court may not use equitable doctrines to bypass the statutory requirements for naturalization imposed by Congress. See INS v. Pangilinan, 486 U.S. 875, 885 (1988) ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these [statutory] limitations.").

**C. Discussion**

The Petition before this Court requires an independent determination of whether the Petitioner is eligible to naturalize; in particular, we must decide whether she has satisfied her burden of proving the statutory requisites set

forth in 8 U.S.C. § 1427(a) of the INA.[12]  An alien applicant

must satisfy the three requirements enumerated in § 1427(a).

Given the fraudulent divorce decree the Petitioner put forth to

support her initial petition for LPR status, resolution of her

petition for de novo review of USCIS naturalization denial hinges

on whether or not she has failed to sufficiently prove that she

was "lawfully admitted for permanent residence," as required by 8

U.S.C. § 1427(a). See also 8 U.S.C. § 1429 ("[N]o person shall be

naturalized unless he has been lawfully admitted to the United

States for permanent residence."); 8 C.F.R. § 316.2(a)(2) ("[T]o

be eligible for naturalization, an alien must establish that he

or she . . . has been lawfully admitted as a permanent resident

of the United States."). The term "lawfully admitted for

permanent residence" is statutorily defined as "the status of

having been lawfully accorded the privilege of residing

permanently in the United States as an immigrant in accordance

with the immigration laws." 8 U.S.C. § 1101(a)(20). The Third

---

[12] This section provides that: "No person, except as otherwise provided
in this subchapter, shall be naturalized unless such applicant, (1)
immediately preceding the date of filing his application for naturalization
has resided continuously, after being *lawfully admitted for permanent
residence*, within the United States for at least five years and during the
five years immediately preceding the date of filing his application has been
physically present therein for periods totaling at least half of that time,
and who has resided within the State or within the district of the Service in
the United States in which the applicant filed the application for at least
three months, (2) has resided continuously within the United States from the
date of the application up to the time of admission to citizenship, and (3)
during all the periods referred to in this subsection has been and still is a
person of good moral character, attached to the principles of the Constitution
of the United States, and well disposed to the good order and happiness of the
United States."  8 U.S.C. § 1427(a)(emphasis added).

Circuit has held that in this context, the term "lawfully" denotes "compliance with substantive legal requirements" of obtaining LPR status. Gallimore v. Attorney Gen. of U.S., 619 F.3d 216, 223 (3d Cir. 2010).

Under Pennsylvania law, a person cannot legally be in a bigamous marriage. See 23 Pa. Cons. Stat. Ann. § 1702(a). While there is an exception for a good-faith belief that a prior marriage was terminated by divorce, under Pennsylvania law the second marriage is not legally recognized until "the impediment to their marriage has been removed."[13] Id. Accordingly, if the Petitioner was granted LPR status based upon an invalid Pennsylvania marriage, she was not *lawfully* admitted for permanent residence and is ineligible for naturalization.

To satisfy her burden of proving her eligibility to naturalize, the Petitioner must show by a preponderance of the evidence that she lawfully obtained LPR status. See 8 U.S.C. § 1427. Any doubts regarding an application for naturalization "should be resolved in favor of the United States and against the claimant." Berenyi, 385 U.S. at 637. Additionally, an alien whose LPR status was obtained through fraud has not been "lawfully admitted for permanent residence" because the "alien is deemed,

_____

[13] Since under Pennsylvania law the Petitioner is eligible to have her present marriage to Tong deemed legal once "the impediment to [her] marriage has been removed," all the Petitioner must do is have her Cambodian marriage to Ly terminated to have her marriage to Tong recognized. If she does so, she may reapply for naturalization, and may be entitled to naturalize.

*ab initio*, never to have obtained [LPR] status."[14] <u>Gallimore</u>,
619 F.3d at 223 (3d Cir. 2010) (quoting <u>In re Koloamatangi</u>, 23
I. & N. Dec. 548, 551 (B.I.A. 2003)). This rule does not require
that the applicant participate in the fraud, instead it applies
either where "he obtained his permanent resident status by fraud,
*or had otherwise not been entitled to it*." <u>Id.</u> at 624 (emphasis
in original).

The only evidence that the Petitioner offers to counter the
Government's evidence calling into question the validity of her
Cambodian divorce is a sworn two-page affidavit from April 2012.
Even accepting the entire affidavit as true, there is nothing in
the affidavit that sufficiently refutes the evidence that her
divorce decree was fraudulent. The Petitioner states in this
affidavit that when she was in the United States, Ly told her
that he would file the divorce in Cambodia, and that she "know[s]
in [her] heart" she is divorced from Ly. She goes on to say "I
will do everything I can to show the divorce paper I have is
real." The affidavit clearly does not show, and indicates that
she does not know and cannot verify, whether her divorce decree
is authentic. Furthermore, while she says that Ly filed for
divorce in Cambodia, she has no way of knowing that it was

---

[14] Importantly, a finding that a noncitizen did not lawfully obtain LPR
status does not mean that the Government can automatically revoke a
fraudulently obtained LPR status. They must do so in accordance with 8 U.S.C.
§ 1256(a), which places limits on the Government's ability to rescind an
aliens' LPR status more than five years after it is obtained.

properly filed and not fraudulently obtained. Accordingly, even after accepting the contents of the affidavit, the Petitioner has failed to meet her burden of proving that she lawfully obtained LPR status. Furthermore, even if we were convinced that the Petitioner's affidavit did sufficiently refute the substance of the consular report, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Kirleis, 560 F.3d 156, 161 (3d Cir. 2009).

Perhaps due to her inability to prove the validity of her current marriage, the Petitioner's arguments all appear grounded in notions of equity. These contentions stem in part from the considerable delay from the time the Government was first informed of the fraudulent Cambodian divorce decrees in 2006 and when she was informed of the report in 2012. Because of that delay, the Petitioner claims that she can no longer get in contact with Ly to confirm the divorce or begin the process of legally terminating her Cambodian marriage so that she can reapply for naturalization. While we certainly do not condone a delay of this magnitude, and we understand the unfortunate nature of the situation the Petitioner finds herself in, courts may not use equitable doctrines to ignore the statutory naturalization requirements imposed by Congress. Pangilinan, 486 U.S. at 885. Accordingly, although we sympathize with the Petitioner's situation, this Court must follow the law as written and

interpreted by the Third Circuit and the Supreme Court, which dictates that we have no authority to substitute an equitable remedy or grant citizenship in the face of the clear failure to meet the strictly imposed naturalization requirements of 8 U.S.C. § 1427(a).

The Petitioner attempts to undermine the above listed reasoning by citing 8 U.S.C. § 1256(a). Section 1256 limits the government's ability to rescind an alien's LPR status more than five years after it is obtained. See Garcia v. Attorney Gen. of U.S., 553 F.3d 724, 727 (3d Cir. 2009). "[T]he time bar in § 1256(a) applies to both rescission and removal proceedings initiated based on a fraudulent adjustment of status." Malik v. Attorney Gen. of U.S., 659 F.3d 253, 257 (3d Cir. 2011).

The argument put forth by the Petitioner confuses the issue of whether she is entitled to naturalize with whether the Government can revoke her LPR status or deport her. Although we have determined that she was not "lawfully admitted for permanent residence" for naturalization purposes, there is no suggestion here that the Government is attempting to, or even arguing that they legally can, rescind Ros' LPR status. Recision and naturalization are two entirely distinct legal questions, and only naturalization is at issue here. The fact that the Petitioner may remain in this country as a Lawful Permanent Resident, despite having obtained her LPR status through fraud,

does not mean she must be granted citizenship. <u>See</u> <u>Jin Mei Lin v.</u>
<u>Napolitano</u>, 11-6373, 2013 WL 2370588, at *5 (E.D. Pa. May 31,
2013) ("[E]ven assuming § 1256(a) applies to bar removal
proceedings against Petitioners, the plain language of the
statute does not in any way contemplate extension of the
limitations period to the naturalization process, and the
holding[] of <u>Garcia</u> . . . do[es] not suggest otherwise.");
<u>Adegoke v. Fitzgerald</u>, 784 F. Supp. 2d 538, 541 (E.D. Pa.
2011)(explaining that section 1256(a) is intended to ensure
noncitizens with LPR status are afforded security from delayed
deportation and rescission proceedings, and in that light, by
being allowed to retain his LPR status that was obtained through
fraud, Petitioner "already enjoys the limited security § 1256(a)
was intended to confer—Congressional intent does not require
[Petitioner] be naturalized as well"). Like the petitioners in
<u>Jin Mei Lin</u> and <u>Adegoke</u>, the Petitioner here contends that
obtaining LPR status suffices to satisfy the statutory
requirement that she have been lawfully admitted for permanent
residence. This contention ignores the requirement articulated in
<u>Gallimore</u> that LPR status be conferred by the USCIS in compliance
with the "substantive legal requirements" of receiving LPR status
in the first place. 619 F.3d at 223. Her assertion that she is
eligible to naturalize based on § 1256(a) confuses her right to

retain her LPR status with a non-existent entitlement to become a naturalized citizen.

After careful consideration, and having viewed the record in the light most favorable to the Petitioner, we conclude that the Government is entitled to summary judgment. The Petitioner's LPR status obtained on the basis of her invalid marriage to Tong was not "lawfully" obtained as required by § 1427(a), because at that time she was still legally married to Ly. By submitting only a vague affidavit to counter the Government's evidence challenging the validity of her current marriage to Tong, the Petitioner has failed to make a showing that she is eligible to naturalize. As a result, she was not "lawfully admitted for permanent residence" as required by 8 U.S.C. § 1427(a), and is ineligible for citizenship. Because there are no genuine issues of material fact, we can resolve the Petitioner's Petition for Review on summary judgment and grant the Government's motion.

## IV. Conclusion

For the forgoing reasons, the Petitioner's Motion in Limine is denied, and the Government's Motion for Summary Judgment is granted.

An order to this effect follows.[15]

---

[15] We note that the Petitioner's petition also raised a claim for violation of 5 U.S.C. § 706, the Administrative Procedures Act ("APA"). Neither the Petitioner nor the Government addressed this claim in their respective motions. The Petitioner's APA claim seeks to compel an agency decision on her naturalization application. That claim was made as part of her Petition (Doc. No. 1) filed on January 20, 2012, prior to when the USCIS sent the Petitioner a Notice of Intent to Deny in March 2012. Therefore, although the APA claim remains in the Petitioners Amended Petition for Review (Doc. No. 7), the Petitioner's APA claim seeks to compel actions that have already been taken. Furthermore, our determination moots the claim. Accordingly, the Petitioners APA claim is dismissed.